# COURT OF APPEALS OF VIRGINIA

## Record No. 0509-25-2

### DFQ MANAGEMENT, LLC, ET AL.
v.
### OCTAGON CREDIT PARTNERS, LP

## Record No. 0511-25-2

### DFQ MANAGEMENT, LLC, ET AL.
v.
### OCTAGON CREDIT PARTNERS, LP

Present: Judges Callins, Duffan and Senior Judge Clements

Argued at Richmond, Virginia

Opinion Issued July 21, 2026[*]

## FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
Claude V. Worrell, II, Judge

Neal L. Walters (John R. Perkaus[1]; Scott Kroner PLC; Perkaus & Farley LLC, on briefs), for appellants.

Elaine D. McCafferty (J. Benjamin Rottenborn; Woods Rogers Vandeventer Black PLC, on briefs), for appellee.

## MEMORANDUM OPINION BY
## <u>JUDGE JEAN HARRISON CLEMENTS</u>

DFQ Management, LLC, ARQ-15 St. Louis, LLC, and Neil D. Freeman (the borrowers)

appeal the circuit court's judgment denying their motions to set aside confessed judgments in

favor of Octagon Credit Partners, LP. The borrowers argue that the circuit court violated Code

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Attorney John R. Perkaus was admitted *pro hac vice*.

§ 8.01-433 by holding an evidentiary hearing before ruling on their motions. They also maintain that the court erred by denying their motions because they set forth "a facially adequate defense or setoff" to the confessed judgments. Further, the borrowers contend that the circuit court erred by limiting the scope of discovery for the evidentiary hearing, and by denying their motion for a continuance so that a witness could testify.

The circuit court misapplied Code § 8.01-433 and employed an improper procedure when adjudicating the borrowers' motions to set aside the confessed judgments. Yet, the court's error was harmless because the borrowers' motions did not state a facially adequate defense or setoff. Further, the record is missing a transcript that is necessary to resolve the borrowers' discovery argument, and they have demonstrated no abuse of discretion in the court's denial of their motion for a continuance. Accordingly, we affirm the circuit court's judgment.[2]

BACKGROUND

In 2017, DFQ executed more than a dozen lending agreements with various lenders to finance a project to convert a building in St. Louis, Missouri into a luxury hotel. The project relied on loans and "funds provided by state and federal new market tax credits through U.S. Bancorp Community Development Corporation . . . , U.S. Bank National Association," and Octagon. Octagon specifically funded two loans as set forth in two respective documents for DFQ—the Mezzanine Loan Agreement and the HTC Loan Agreement. Freeman executed a guaranty agreement promising to pay the Mezzanine loan, and ARQ executed a guaranty agreement for the HTC loan. Through the agreements, DFQ appointed attorneys-in-fact who were authorized to obtain confessed judgments against it in the event of default.

---

[2] In an assignment of cross-error, Octagon maintains that the circuit court erred by denying its motion for summary judgment. Our holding moots Octagon's assignment of cross-error.

DFQ subsequently defaulted on the loans. Consequently, Octagon obtained confessed judgments against the borrowers in the circuit court under Code § 8.01-432—a $13,328,973 judgment against DFQ and Freeman under the Mezzanine loan, and a $4,744,845 judgment against DFQ and ARQ under the HTC loan.[3]

The borrowers moved the circuit court to set aside the confessed judgments under Code § 8.01-433, asserting two grounds in their motions.[4] First, they argued that Octagon could not obtain confessed judgments under Virginia law because the agreements' choice of law provisions stated that Missouri law governed. The borrowers' motions asserted that when a contract specifies that the "substantive law" of another jurisdiction governs its interpretation, that "choice of substantive law" controls.

Second, the borrowers argued that Octagon had violated Missouri's implied covenant of good faith and fair dealing under their loan agreements, which entitled them to a setoff. The borrowers asserted that in late 2019, they began seeking to replace the Octagon loans, both of which carried a 15% interest rate, with 5% interest loans from Midland States Bank. The borrowers sought to replace the Octagon loans after learning that U.S. Bancorp, which was funding other portions of the project, would not make timely capital contributions. Midland States Bank allegedly agreed to provide a 5% replacement loan but "sought consent" from U.S. Bank and U.S. Bancorp before "funding" and "finalizing" the replacement loans. U.S. Bank and U.S. Bancorp allegedly "refused to allow the replacement funding," leaving the higher interest rate loans from Octagon.

---

[3] The judgment against DFQ and ARQ led to the appeal in Record No. 0509-25-2. The judgment against DFQ and Freeman led to the appeal in Record No. 0511-25-2. We granted the parties' joint motion to consolidate these appeals.

[4] The motions were substantively identical, and the parties and court treated them as a single matter.

The borrowers' motions to set aside the confessed judgments asserted that, "[u]pon information and belief," Octagon had "colluded with" U.S. Bancorp and U.S. Bank and "was involved in the discussions with [U.S. Bancorp] employees to block Midland . . . Bank[']s funding" because Octagon wanted to maintain its position under the 15% interest-loans.  Based on Octagon's alleged violation of the implied duty of good faith and fair dealing, borrowers claimed they were entitled to a setoff in the amount of the extra 10% interest paid.

After a June 2024 hearing,[5] the circuit court denied the motions to set aside the confessed judgments based on the "choice of law argument."  It found that Octagon "had the right to confess judgment . . . in Virginia, under Virginia law."  The court did not rule on the borrowers' implied covenant of good faith and fair dealing argument but instead continued the matter for an evidentiary hearing in July.  The court ordered the parties to "exchange witness lists and exhibits" no later than a week before the evidentiary hearing.

The borrowers moved the circuit court to clarify or reconsider its ruling.  They asserted that under Code § 8.01-433, the court must first decide whether their motions had asserted "a facially adequate defense or setoff" to the confessed judgments, and at that stage, they were not required to prove the merits of its defense or setoff.  *See Catjen, LLC v. Hunter Mill W., L.C.*, 295 Va. 625, 633 (2018).  Continuing, the borrowers argued that after deciding that their motions had asserted an adequate defense or setoff, the court had to set the matter on its docket for a trial on the merits of Octagon's claims.  Code § 8.01-433; *see Catjen*, 295 Va. at 633.  Thus, the borrowers asked the circuit court to clarify that, because it had ordered an evidentiary hearing, it in fact had granted the motion to set aside the confessed judgment on the implied covenant of good faith and fair dealing argument.  Further, they asked the court to release the upcoming evidentiary hearing date, set the

---

[5] The record does not include a transcript of this hearing.

matter for trial, and permit discovery. They also moved to continue the matter so they could prepare "for a full trial."

At the July hearing, the borrowers relied on *Catjen* to argue that the court could order an evidentiary hearing only after granting a motion to set aside the confessed judgments. They reasoned that by ordering an evidentiary hearing, the court must have granted their motions with respect to the implied covenant of good faith and fair dealing argument. But the July hearing date did not give them enough time for discovery before trial, so they asked the court to clarify that it had granted their motion and requested a continuance.

The circuit court "disagree[d]" with the borrowers' interpretation of Code § 8.01-433's procedure. The court found that a hearing on the borrowers' remaining defense was appropriate, during which the parties could present evidence. But the court granted the requested continuance to permit further discovery and set the hearing for October 2, 2024. The court stated that, at that hearing, it would consider any evidence the parties wanted to present. In an order reflecting its ruling, the court set discovery and witness list deadlines. The borrowers objected to the circuit court's "failure . . . to set the matter on the regular trial docket and permit the parties to proceed with a typical discovery and trial schedule."

Before the October hearing, the borrowers moved the circuit court to compel Octagon to respond to discovery requests, arguing that Octagon had improperly limited its responses to the issue of good faith and fair dealing. They also moved for a continuance, asserting again that the circuit court had "declined to set the matters on a regular litigation trajectory and instead scheduled an expedited hearing." After the hearing,[6] the court "dismissed" the motion to compel, continued the case to January 21, 2025, and set a deadline to complete "[a]ll discovery."

_____

[6] The record does not include a transcript of the October 2024 hearing.

- 5 -

The court's order recited that it had rendered its rulings "[f]or the reasons stated from the bench" at the hearing.

At the January 2025 hearing,[7] J.P. Williamson, the Chief Investment Officer of Octagon, testified about the structure of the loan and guaranty agreements and the amounts due. He denied colluding with any bank to prevent the borrowers from obtaining replacement funding. The borrowers introduced an intercreditor agreement between Octagon and Midland States Bank, and an intercreditor agreement between Octagon and U.S. Bank. The borrowers also introduced two emails into evidence between the various banks and attorneys discussing Octagon's loans to the borrowers.

During the hearing, the court told the parties that it intended to finish the hearing that day, and the borrowers moved to continue the case because Freeman was unavailable to testify. They argued that they were entitled to a continuance because the circuit court had informed the parties only the week before the trial that they would have two hours for the hearing. Based on that scheduling decision, the borrowers believed that there would not be time for Freeman to testify, so they had assumed that the trial would take place over multiple days. The circuit court took the motion under advisement, directing the parties to proceed with the hearing.

In addition, throughout the hearing, the parties disagreed about which side carried the burden of proof. Octagon asserted that the borrowers had "the burden of proof" because they were "trying to undo" the confessed judgments. Octagon maintained, "This is not a hearing on the merits of the case. This is a hearing on the [borrowers]' motions to set aside the confessed judgments." The borrowers countered that under Code § 8.01-433, as interpreted in *Catjen*, the

---

[7] Before the January hearing, Octagon moved for summary judgment against Freeman and ARQ, asserting that they had waived their defenses and could not rely on any duty of good faith and fair dealing in the loan agreements because they were not parties to those agreements. The circuit court ultimately denied their motion for summary judgment. As noted above, our holding in this opinion moots Octagon's assignment of cross-error on that issue.

hearing could only be a trial on the merits of Octagon's underlying claim, given that the court was taking evidence, so Octagon had to prove the merits of its claims. Further, the borrowers argued that they had been prejudiced by the way the proceeding "was conducted" and they were "seeking" to require Octagon to "prove [its] case."

Following closing arguments, the circuit court ruled that Williamson's testimony was sufficient to demonstrate the "amount owed" under the loans. The court noted that some evidence could be missing as Freeman was not available to testify, and upon learning that Freeman had not been subpoenaed for the hearing, the court denied the borrowers' motion for a continuance. The court acknowledged the borrowers' argument regarding "process or procedure" but found that "the way in which the case was discussed today and handled today, that all the evidence was available before the [c]ourt." The court denied the borrowers' motions to set aside the confessed judgments "without regard to whoever's burden of proof it was ultimately, because both sides had a case in chief," and the court was "satisfied with the record."

On appeal, the borrowers argue that the circuit court erred by (1) not conducting a full trial on the merits of Octagon's contract claims; (2) ruling that Octagon could obtain confessed judgments in Virginia despite the applicable Missouri choice-of-law provisions; (3) ruling that their good faith and fair dealing argument was not a facially adequate defense or setoff; (4) limiting their discovery to issues raised in their motions to set aside the confessions of judgment; and (5) denying their final motion for a continuance.

ANALYSIS

I. The circuit court correctly determined that Octagon could obtain confessed judgments in Virginia under Code § 8.01-432.

"In cases involving choice-of-law questions, Virginia adheres to the use of traditional rules applicable to conflicts of laws." *Frye v. Commonwealth*, 231 Va. 370, 376 (1986) (citing *McMillan v. McMillan*, 219 Va. 1127, 1129-31 (1979)). Further, contracting parties have the

- 7 -

right to specify "that the *substantive* law of another jurisdiction governs its interpretations or application." *Kirdassi v. White*, 84 Va. App. 260, 281 (2025) (emphasis added) (quoting *Settlement Funding, LLC v. Neumann-Lillie*, 274 Va. 76, 80 (2007)). Thus, if "a contract specifies that the substantive law of another jurisdiction governs its interpretation or application, the parties' choice of substantive law should be applied." *Settlement Funding*, 274 Va. at 80 (citing *Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.*, 240 Va. 337, 342 (1990)). Similarly, Virginia recognizes the right of parties to include "forum selection clauses" in their contracts. *Paul Bus. Sys.*, 240 Va. at 342. For example, in *Paul Business Systems* the Supreme Court held that a contractual clause requiring "any and all causes of action" arising from the contract to be brought "only" in a "state or federal court . . . within the State of New York" required a suit filed in Virginia to be dismissed. *Id.* at 340, 344.

Consistent with those precedents, other courts generally have interpreted a contractual choice-of-law provision to incorporate "only" a state's substantive laws unless it also "expressly" incorporates the state's "procedural laws." *Stone & Webster, Inc. v. Baker Process, Inc.*, 210 F.Supp.2d 1177, 1186 (S.D. Cal. 2002). That interpretive principle arises in part from the "administrative costs" and "[e]normous burdens" that would arise if a state were required to apply "the rules of another state." John F. Coyle, *The Canons of Construction for Choice-of-Law Clauses*, 92 Wash. L. Rev. 631, 648 (2017).

Here, the borrowers argue that the loan agreements incorporated Missouri's procedural law, and not just its substantive law, because they provided that "all acts and transactions . . . and the rights and obligations of the parties" would be governed by Missouri law, and those choice of law provisions "did not *limit*" their applicability to only Missouri's "substantive laws." (Emphasis added). They also emphasize that the promissory notes provided that they would be "enforced in accordance with the laws of . . . Missouri."

The borrowers' argument, however, turns the above interpretive principles on their head. Nowhere did the contracts *expressly* incorporate Missouri's procedural law, and we will not interpret those provisions to do so based on inferences or because they did not "limit" their applicability to only Missouri's substantive law. Further, had the parties intended Missouri's procedural laws to apply, they could have included a forum selection clause requiring any suit to be filed in Missouri, which would have been enforceable in the Commonwealth's courts. But without any such provisions, the borrowers' argument fails. Thus, the circuit court did not err by denying their motions to set aside the confessed judgments on the choice-of-law argument.[8]

II. The circuit court employed an improper procedure when adjudicating the borrowers' motions to set aside the confessed judgments, but the error was harmless.

"Confessed judgments are creatures of statute in Virginia." *Westlake Legal Grp. v. Flynn*, 293 Va. 344, 350 (2017). Under Code § 8.01-432, a creditor may "obtain an enforceable judgment against a debtor without the need to file suit or to establish any fact other than the existence of a valid instrument permitting the creditor to direct an attorney-in-fact to confess the judgment." *Catjen*, 295 Va. at 632 (quoting *Safrin v. Travaini Pumps USA, Inc.*, 269 Va. 412, 419 (2005)). Confessed judgments may be used to recover "debts that [are] fixed, liquidated, and acknowledged by both debtor and creditor" in a "contract containing [a] confessed judgment provision." *Westlake Legal Grp.*, 293 Va. at 352 n.4. "[A] confessed judgment is to be treated

_____

[8] In addition, it is well established that, without "a showing to the contrary," courts will "presume that foreign law—whether applicable because of a choice-of-law clause or because of nonconsensual choice-of-law principles—is the same as the law of the forum, which is Virginia in this case." *Appalachian Reg'l Healthcare v. Cunningham*, 294 Va. 363, 370 n.6 (2017) (citing *Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 172 n.2 (2016)). Although the borrowers' opening briefs on appeal detail the differences between Missouri and Virginia law regarding confessed judgments, their motions in the circuit court did not, instead asserting only that because Missouri law controlled, the confessed judgments should be "dismissed." Thus, the circuit court could presume the applicable law was the same in both jurisdictions, and the borrowers' motions gave it no reason to set aside or "dismiss" the confessed judgments.

in all respects as a final judgment 'rendered by the court.'" *Safrin*, 269 Va. at 418 (quoting Code § 8.01-432).

Code § 8.01-433 "provides a limited exception to the finality of a confessed judgment." *Catjen*, 295 Va. at 632 (citing *Safrin*, 269 Va. at 419 n.2).

> Any judgment confessed under . . . § 8.01-432 may be set aside or reduced upon motion of the judgment debtor made within twenty-one days following notice to him that such judgment has been entered against him, and after twenty-one days notice to the judgment creditor or creditors for whom the judgment was confessed, on any ground which would have been *an adequate defense or setoff* in an action at law instituted upon the judgment creditor's note, bond or other evidence of debt upon which such judgment was confessed. Whenever any such judgment is set aside or modified the case shall be placed on the trial docket of the court, and the proceedings thereon shall thereafter be the same as if an action at law had been instituted upon the bond, note or other evidence of debt upon which judgment was confessed. After such case is so docketed the court shall make such order as to the pleadings, future proceedings and costs as to the court may seem just.

Code § 8.01-433 (emphasis added).

The Supreme Court has explained that Code § 8.01-433 creates a two-step process. *Catjen*, 295 Va. at 633. The first step is "a proceeding where *the only issue* to be determined is whether the judgment debtor's *pleadings* assert a facially adequate defense or setoff." *Id.* (emphases added). "At this initial stage, there is no requirement that the judgment debtor prove the merits of the asserted defense or setoff." *Id.* If the pleadings assert "an adequate defense or setoff," the circuit court should grant the motion, set aside the confessed judgment, and proceed to the second step—"a full trial on the merits of the *creditor's* claim." *Id.* (emphasis added).

The circuit court disregarded the above procedure regarding the borrowers' claim that the confessed judgments should be set aside because Octagon violated the implied covenant of good faith and fair dealing. The court declined to rule on that argument based solely on the borrowers' pleadings, and instead scheduled an evidentiary hearing. But the court should not have required

the borrowers to present any evidence before it ruled on their motion to set aside the confessed judgments under Code § 8.01-433, and it was error to do so. Requiring the debtor to "prove the merits of the asserted defense" at the initial stage of the process is "illogical." *Catjen*, 295 Va. at 633. "[U]pon granting the motion to set aside or reduce a confessed judgment, a court is required to place the matter 'on the trial docket of the court,'" where the case would proceed "'as if an action at law had been instituted'" on the "'debt,'" and the same evidence would be presented again. *Id.* (quoting Code § 8.01-433).

Indeed, the court's procedural error in this case created substantial confusion at the January 2025 evidentiary hearing regarding which party bore the burden of proof. In fact, the court ultimately ruled without regard to who bore the burden of proof. But because the court had not yet ruled on the borrowers' motions to set aside the confessed judgment at the time of the evidentiary hearing, the borrowers had no burden to present any *evidence* to demonstrate that their *pleadings* asserted an adequate defense or setoff. Thus, the record demonstrates that the circuit court erred by failing to comply with Code § 8.01-433's procedure.

Having determined that the trial court erred, we must determine whether the error was harmless. "Code § 8.01-678 makes 'harmless-error review required in all cases'" where the error does not implicate the court's subject matter jurisdiction. *Commonwealth v. White*, 293 Va. 411, 420 (2017) (quoting *Commonwealth v. Swann*, 290 Va. 194, 200 (2015)). "The harmless error inquiry is the process by which a reviewing court identifies trial error and then determines whether that error affected the result." *Montgomery v. Commonwealth*, 56 Va. App. 695, 702 (2010) (citing *Sochor v. Florida*, 504 U.S. 527, 539-40 (1992)). "Absent an error of constitutional magnitude, 'no judgment shall be arrested or reversed' '[w]hen it plainly appears from the record" that "substantial justice has been reached.'" *Spruill v. Garcia*, 298 Va. 120, 127 (2019) (alteration in original) (quoting Code § 8.01-678).

In Virginia, the "'harmless-error concept is no mere prudential, judge-made doctrine of appellate review,' but rather, it 'is a legislative mandate, which has been part of our statutory law since the early 1900s, and limits the adjudicatory power of Virginia appellate courts.'" *Id.* at 128 (quoting *White*, 293 Va. at 419). The doctrine is "'favored'" in the Commonwealth and arises "from the 'imperative demands of common sense.'" *Id.* (first quoting *White*, 293 Va. at 420; and then quoting *Oliver v. Commonwealth*, 151 Va. 533, 541 (1928)). The reviewing court must consider the "record as a whole and . . . ignore errors that are harmless" lest such courts "'retrea[t] from their responsibility, becoming instead "impregnable citadels of technicality."'" *United States v. Hasting*, 461 U.S. 499, 509 (1983) (second alteration in original) (quoting R. Traynor, *The Riddle of Harmless Error* 14 (1970)). The record demonstrates that although the court employed an erroneous procedure in adjudicating the borrowers' motions to set aside the confessed judgments, that error was harmless because the borrowers did not assert an adequate defense or setoff as a matter of law.[9]

The borrowers' motions asserted that the confessed judgments should be set aside because Octagon violated the implied covenant of good faith and fair dealing. "Under Missouri law, a duty of good faith and fair dealing is implied in every contract." *Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Tr. Co.*, 464 S.W.3d 177, 185 (Mo. 2015). Put simply, the covenant requires "the parties to a contract . . . to cooperate to enable performance of the expected benefits of the contract." *Reliance Bank v. Paramont Props., LLC*, 425 S.W.3d 202, 206 (Mo. Ct. App. 2014). The covenant, however, "is not a general reasonableness requirement." *Schell v. Lifemark Hosps.*, 92 S.W.3d 222, 230 (Mo. Ct. App. 2002). It is not "an overflowing cornucopia of wished-for legal duties." *Id.* (quoting *Comprehensive Care Corp. v.*

---

[9] Whether the pleadings asserted an adequate defense or setoff is a legal issue, and appellate courts have "discretion to decide legal issues for the first time on appeal." *Cal. Condo. Ass'n v. Peterson*, 301 Va. 14, 23 (2022).

*RehabCare Corp.*, 98 F.3d 1063, 1066 (8th Cir. 1996)). Nor does it "prohibit all unethical conduct," as "[n]ot all unethical conduct is unlawful." *Id.*

Even "expansively conceived," the covenant does not include a "duty of candor." *Id.* (citing *Market St. Assocs. Ltd. P'ship v. Frey*, 941 F.2d 588, 594 (7th Cir. 1991)). Instead, the covenant "prevent[s] opportunistic behavior, that is, the exploitation of changing economic conditions to ensure gains *in excess of those reasonably expected* at the time of contracting." *Frontenac Bank v. T.R. Hughes, Inc.*, 404 S.W.3d 272, 280 (Mo. Ct. App. 2012) (emphasis added) (quoting *Schell*, 92 S.W.3d at 230). A party violates the covenant of good faith by "exercis[ing] a judgment conferred by the express terms of agreement in such a manner as to evade the spirit of the transaction or so as to deny the other party the expected benefit of the contract." *Reliance Bank*, 425 S.W.3d at 206 (quoting *Martin v. Prier Brass Mfg. Co.*, 710 S.W.2d 466, 473 (Mo. Ct. App. 1986)). A party also violates the duty of good faith by "willfully rendering imperfect performance, abusing power in the specification of terms, or wrongfully interfering with or failing to cooperate with the other party's performance." *Id.* at 207. But there is "no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and [a party] acts in accordance with the express terms of the contract." *Arbors*, 464 S.W.3d at 185 (quoting *City of St. Joseph v. Lake Contrary Sewer Dist.*, 251 S.W.3d 362, 371 (Mo. Ct. App. 2008)).

The borrowers' motions to set aside the confessed judgments failed to allege that Octagon violated either the terms or the spirit of the loan agreements. Octagon was not required to consent to a replacement loan from Midland States Bank under the terms of the loan agreements, nor did Octagon seek or obtain any benefit that was not originally contemplated. *Compare Reliance Bank*, 425 S.W.3d at 207 (holding that a bank did not violate the covenant of good faith and fair dealing by not honoring verbal commitments to the borrower when those

verbal commitments were not part of the underlying note, and the bank violated no "contractual expectancy"), *with Frontenac Bank*, 404 S.W.3d at 280-81 (finding that a bank might have violated the covenant of good faith and fair dealing by refusing the borrower's ability to draw on a line of credit when the borrower was up to date on the payments and had credit available). Indeed, the loan agreements required Octagon's "prior written consent" if the borrowers wanted to prepay any portion of the loans, demonstrating that the parties contemplated that Octagon could withhold its consent under some circumstances. Further, the borrowers have not alleged that it was Octagon's fault that other lenders involved in the transaction did not make capital contributions, and Octagon did not act in bad faith by standing on the terms of its loans, which entitled it to 15% interest, a benefit both parties agreed to and understood was a possibility when they executed the agreements.[10]

In sum, the borrowers' allegations failed to demonstrate that Octagon acted in bad faith. Thus, despite the circuit court's erroneous procedure when adjudicating the borrowers' motions under Code § 8.01-433, the error was harmless because the borrowers' motions did not assert an adequate defense or setoff to the confessed judgments as a matter of law.

---

[10] In addition, in their opening brief and at oral argument, the borrowers argued that this Court could apply the "demurrer standard" when ruling on whether their motions asserted an adequate defense or set off. *See Rolston v. Quick*, 107 Va. Cir. 349, 354-55 (Loudoun Cir. Ct. 2021) (holding that, in evaluating a motion to set aside a confessed judgment, there must be more than "a mere allegation of a defense; the defendant must present an allegation of facts to support the defense" (quoting *MDDC, LLC v. Lawrence*, 92 Va. Cir. 326, 327 (Fairfax Cir. Ct. 2016))). Under that standard, the borrowers needed to set forth allegations "with 'sufficient definiteness to enable the court to find the existence of a legal basis for its judgment.'" *Theologis v. Weiler*, 76 Va. App. 596, 600 (2023) (quoting *Patterson v. City of Danville*, 301 Va. 181, 197 (2022)). Further, we are not bound by any "conclusions of law that are couched as facts." *Id.* The borrowers' summary allegations, upon information and belief, that Octagon "colluded" with U.S. Bancorp and U.S. Bank "to block Midland States Bank replacement funding" are examples of nonbinding, conclusory allegations, as they are not supported by instances of specific conduct.

III. The record is insufficient to address the borrowers' discovery claim.

"On appeal, we presume the judgment of the trial court is correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the trial court has erred in the respect alleged by [the] appellant." *Bay v. Commonwealth*, 60 Va. App. 520, 528 (2012). Without a sufficient record, "we will not consider the point." *Dixon v. Dixon*, 71 Va. App. 709, 716 (2020) (quoting *Robinson v. Robinson*, 50 Va. App. 189, 197 (2007)).

"The transcript of any proceeding is a part of the record when it is filed in the office of the clerk of the trial court within 60 days after entry of the final judgment." Rule 5A:8(a). "When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered." Rule 5A:8(b)(4)(ii). "If . . . the transcript [or statement of facts] is indispensable to the determination of the case, then the requirements for making the transcript [or statement of facts] a part of the record on appeal must be strictly adhered to." *Veldhuis v. Abboushi*, 77 Va. App. 599, 606-07 (2023) (alterations in original) (quoting *Bay*, 60 Va. App. at 528).

The borrowers contend that the circuit court erred by limiting their discovery requests to the issue of whether Octagon violated the implied covenant of good faith and fair dealing. They assert that, under Code § 8.01-433, they were entitled to complete discovery on all issues after the case had been set on the circuit court's docket for a full trial on the merits; thus, the court erred by denying their motion to compel discovery responses to the extent they exceeded that single issue.

After the October 2024 hearing, the circuit court dismissed the borrowers' motion to compel discovery "[f]or the reasons stated from the bench" during the hearing. Without a transcript or written statement of the facts of that hearing, the record does not demonstrate what

- 15 -

those reasons were or the basis for the circuit court's ruling. To be sure, the borrowers' opening brief proffers the circuit court's "stated rationale" for its ruling before explaining why that rationale allegedly was erroneous. But we "must dispose of the case upon the record and cannot base [our] decision upon appellant's petition or brief . . . . We may act only upon facts contained in the record." *Smith v. Commonwealth*, 16 Va. App. 630, 635 (1993). Without a transcript of the October 2024 hearing, we cannot discern the reasons for the circuit court's ruling or determine whether that ruling was in error. Accordingly, the transcript is indispensable, and the borrowers' argument is waived. Rule 5A:8(b)(4)(ii).

### IV. The circuit court did not abuse its discretion by denying the borrowers' motion for a continuance.

"The decision to grant a motion for a continuance is within the sound discretion of the circuit court and must be considered in view of the circumstances unique to each case." *Reaves v. Tucker*, 67 Va. App. 719, 733 (2017) (quoting *Haugen v. Shenandoah Valley Dep't of Soc. Servs.*, 274 Va. 27, 34 (2007)). A ruling denying a motion to continue "will be reversed 'only upon a showing of abuse of discretion and resulting prejudice to the movant.'" *Reyes v. Commonwealth*, 297 Va. 133, 139 (2019) (quoting *Ortiz v. Commonwealth*, 276 Va. 705, 723 (2008)). The party seeking reversal carries the burden of showing "that the court abused its discretion and that injury resulted to the party." *Haugen*, 274 Va. at 34 (quoting *Rosenberger v. Commonwealth*, 159 Va. 953, 957 (1932)).

When a party moves for a continuance so that a presently unavailable witness can testify, the party must make a proper proffer of the expected testimony so that we can "determine whether prejudice resulted" from the denial of the motion. *Lowery v. Commonwealth*, 9 Va. App. 304, 307 (1990). "The burden is on the party seeking a continuance to show that it is likely that the witness would be present at a later date, and would testify in the manner indicated in the proffer." *Chichester v. Commonwealth*, 248 Va. 311, 322 (1994) (citation omitted).

- 16 -

The borrowers maintain that the court erred by denying their motion for a continuance so that Freeman could testify. But they failed to proffer what Freeman's testimony would have been. Without such a proffer, we cannot evaluate whether the borrowers suffered prejudice, so their argument fails to demonstrate reversible error.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*